IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.C.

05 OCT 31  PM 6: 21

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

| | | |
|---|---|---|
| **CHARLES HENDERSON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: **03-2162 D** |
| | ) | |
| **SOUTHWEST TENNESSEE** | ) | |
| **COMMUNITY COLLEGE,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is the motion (dkt. # 43) of Defendant Southwest Tennessee Community College ("STCC" or "Defendant") for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff Charles Henderson ("Plaintiff") asserts, *inter alia*, violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) et seq. on the basis of disparate treatment, retaliation and hostile work environment. On July 22, 2005, Defendant filed the instant motion for summary judgment asserting that Plaintiff fails to raise a genuine issue of material fact. Plaintiff filed a response on October 12, 2005. The Court grants Defendant's motion for the following reasons.

## I. FACTUAL BACKGROUND

Plaintiff is a black male employed by Defendant. He asserts claims against Defendant of race discrimination and retaliation in employment. Plaintiff began his employment with STCC in October 1991 and has since held several positions at STCC. Defendant is a governmental entity that was formed by the merger of State Technical Institute at Memphis ("State Tech") and Shelby State

This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on _11-2-05_



Community College on July 1, 2000.

Plaintiff began his employment with Defendant as a Case Manager in State Tech's Development Center, Office of Job Training. On July 1, 1993 Plaintiff was promoted to the position of Executive Assistant to the President of State Tech, and he received a salary adjustment with the promotion. Plaintiff continued in this job position until June 15, 2001, at which time he was appointed to the position of Temporary Interim Director of DACUM/WorkKeys. On July 1, 2002, his title was changed to Director of DACUM/WorkKeys.

Plaintiff claims that over the course of his employment, several aspects of his job description were either eliminated or transferred away from him to other employees. First, Plaintiff claims that the then-President of State Tech, Charles Temple, transferred leadership for the Human Resources Department ("HRD") to Plaintiff in 1994. In the fall of 1995, however, after John Kirk became Interim President of State Tech, Plaintiff claims that Mr. Kirk changed the HRD's policy so that it reported directly to Mr. Kirk. Defendant denies that the HRD ever reported to Plaintiff. Second, in August 1996, the then-President of State Tech, Dr. Doug Call, told Plaintiff that he would no longer be the college's affirmative action officer, a subject area for which Plaintiff had responsibility since transferring into the Executive Assistant job position. Plaintiff claims that he was told that Dr. Call had other things for Plaintiff to do, but that those other things never materialized. Third, State Tech's Internship Program, for which Plaintiff had responsibility from 1994 through 2001, first had its budget reduced and then was eliminated entirely. Fourth, in the summer of 1999, Dr. Call decided to discontinue the State Tech Leadership Academy, for which Plaintiff had been the administrator.

In July 1993, all employees except Plaintiff of State Tech received an across-the-board salary increase. When Plaintiff inquired about this occurrence, Mr. Kirk, who at that time was Dean of Business and Finance for State Tech, told Plaintiff that it was the institution's policy that he could not receive both an across-the board salary increase and an increase associated with his promotion. Defendant changed that policy in 1997 to enable an employee to receive both types of increases. In 1997, when Plaintiff learned that an employee could receive both increases, he requested and was

2

granted the additional salary increase.

Plaintiff's salary otherwise remained the same until July 1, 2002, when it was decreased by 10%. This decrease came after several instances of negotiation in which Plaintiff managed to maintain his salary at its previous level. First, on June 15, 2001, after Plaintiff had been Executive Assistant to the President for eight years, Plaintiff was told by Dr. Jim Willis, Vice President for Workforce Development and Continuing Education, that his position was no longer available, and that the would have to accept an entry-level position with the Workforce Development Center ("WDC"), as well as a 50% salary decrease. Plaintiff had previously been working closely with the WDC as DACUM and WorkKeys facilitator. Negotiation resulted in Plaintiff obtaining the job title of Temporary Interim Director of DACUM/WorkKeys without a reduction in his salary.

Second, when he received that new job title, Plaintiff was told that, in order to have the words "Temporary Interim" removed from his title, he would have to reapply for the position through the formal selection process and would receive a 12% salary decrease if selected. Plaintiff never formally applied for the position because there was never a positing for a Director of DACUM/WorkKeys. When Plaintiff's salary was finally decreased by 10%, his job title was also amended, though he claims his duties did not change. Defendant claims that Plaintiff had been warned that organizational changes stemming from the 2000 STCC merger would likely result in title and pay changes for employees.

Plaintiff claims that it was Defendant's policy to reduce salary when an employee transferred to a position with fewer responsibilities, but that his new position involved no reduction in responsibilities, even though his salary was reduced by 10%. Plaintiff claims that two similarly situated white individuals did not have their salaries reduced by 10%. Plaintiff also claims that the policy was changed on July 25, 2002 so that a 10% pay cut was no longer required. Defendant denies that such a policy existed.

In 1998, Plaintiff and another individual filed a complaint with the Office of Federal Contract Compliance Program ("OFCCP"), alleging race discrimination by then-President Call. OFCCP

3

found that Dr. Call and State Tech had discriminated against three individuals listed in the complaint, though it did not find that State Tech had discriminated against Plaintiff. In 2000, Plaintiff filed a second OFCCP complaint.

Plaintiff alleges that his salary decrease in 2002 constituted retaliation for his filing of the OFCCP complaint. Plaintiff also claims that the salary decrease has created a severe and pervasive hostile work environment for him, including isolation by colleagues and school administrators and no selections for college committees.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 12, 2002, and received a Right to Sue Notice before commencing suit in this Court.

## II. LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In other words, summary judgment is appropriately granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party moving for summary judgment may satisfy its initial burden of proving the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. Id. at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the opponent's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., Federal Practice and Procedure § 2727, at 35 (2d ed. 1998). Facts must be presented to the court for evaluation. Kalamazoo River Study Group v. Rockwell Int'l Corp., 171 F.3d 1065, 1068 (6th Cir. 1999). The court may consider any material that would be admissible or usable at

4

trial. 10a Charles A. Wright et al., Federal Practice and Procedure § 2721, at 40 (2d ed. 1998). Although hearsay evidence may not be considered on a motion for summary judgment, Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. Celotex, 477 U.S. at 324; Thaddeus-X v. Blatter, 175 F.3d 378, 400 (6th Cir. 1999). In evaluating a motion for summary judgment, all the evidence and facts must be viewed in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Wade v. Knoxville Utilities Bd., 259 F.3d 452, 460 (6th Cir. 2001). Justifiable inferences based on facts are also to be drawn in favor of the non-movant. Kalamazoo River, 171 F.3d at 1068.

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

## III. ANALYSIS

### A. Timeliness of Claims

A Title VII plaintiff's claims must be both procedurally proper and timely to proceed. The plaintiff must first exhaust administrative remedies under the statute by filing a charge with the EEOC. See Haithcock v. Frank, 958 F.2d 671, 675 (6th Cir. 1992). "It is well settled that federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge." Strouss v. Mich. Dep't of Corrs., 250 F.3d 336, 342 (6th Cir. 2001).

To be actionable, any discriminatory act must have occurred within 300 days of the date on

5

which the plaintiff filed the EEOC charge.  See 42 U.S.C. § 2000e-5(e)(1).  "A discrete . . . discriminatory act 'occurred' on the day that it 'happened.'" Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002).  The Court in Morgan counseled "'strict adherence to the procedural requirements specified by the legislature.'" Id. at 108 (quoting Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980)).  Each  "discrete act," such as a termination or a failure to promote, constitutes a separate actionable unlawful employment practice.  Id. at 114.

Plaintiff filed his EEOC charge on December 17, 2002.  Therefore, any isolated discriminatory acts that occurred before February 21, 2002, are outside the statutory time limit and beyond this Court's ability to consider them as potential Title VII violations.  The only incident that has occurred within this 300 day time period is Plaintiff's transfer to WDC that became effective July 1, 2002.

There is no evidence in the record from which the Court could conclude that the incidents occurring before February 21, 2002 were continuing violations.  "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." Id. at 112-13.   Plaintiff argues that Defendant's acts of  retaliation and hostile work environment stemmed from his 1998 and 2000 OFCCP complaints.  However, the complaints and the actions that formed the basis for these complaints are separate discrete acts that fall outside of the statutory time bar.  Notwithstanding their untimeliness, Plaintiff may use the acts occurring prior to the 300 day time period as background evidence in support of a timely claim. Id. at 113.

**B. Disparate Treatment**

Plaintiff argues that the series of actions Defendant took to change Plaintiff's job title and responsibilities were motivated by racial discrimination.  To meet his burden and establish a *prima facie* case of discrimination, Plaintiff must prove that he (1) is a member of a protected group, (2) was subject to an adverse employment action (3) was qualified for the position sought or held, and (4) was replaced by a person outside the protected class.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 801 (6th Cir. 1994).  The

6

fourth element may also be satisfied by showing that "similarly situated" non-protected employees were treated more favorably. <u>Talley v. Bravo Pitino Restaurant, Ltd.</u>, 61 F.3d 1241, 1246 (6th Cir. 1995). To be considered "similarly situated," individuals must, so far as relevant, be subject to the same standards and have engaged in the same conduct without such differentiating circumstances that would justify different treatment. <u>Mitchell v. Toledo Hospital</u>, 964 F.2d 577, 583 (6th Cir. 1992); <u>Ercegovich v. Goodyear Tire & Rubber Co.</u>, 154 F.3d 344, 352 (6th 1998). The Court should not so narrowly apply the "similarly situated" guidelines so as to preclude employees occupying unique positions, such as Plaintiff, from Title VII protection. <u>Ercegovich</u>, 154 F.3d at 353.

Defendant disputes Plaintiff's claim of discrimination and offers the policies resulting from the consolidation as a legitimate nondiscriminatory reason for Plaintiff's change in title and subsequent pay reduction. In 2001, a year before the effective consolidation, Defendant told Plaintiff that he would have to accept an entry-level position with WDC and a 50% salary decrease. Even though Plaintiff retained his title from 2001 until 2002, "he no longer served in that capacity" and "he was no longer attached to the president as an executive assistant." Paul Thomas Depo. ¶ 61. Upon his request, Plaintiff was allowed to maintain his existing salary, "so as to provide an opportunity for him to either adjust to that salary that was a little lower, or to decide whether he wished to remain in the organization." Dr. Essex Depo. ¶ 140. Plaintiff signed a contract confirming his salary and appointment as Director of DACUM/WorkKeys on July 17, 2001. Pl.'s Resp. to Def.'s Mot. for Sum. Judg., Ex. 28.

Plaintiff interprets his transfer from Executive Assistant to a position in the WDC as a demotion. STCC's demotion policy serves as his basis. Under the policy, "a demotion is defined as a reduction in position or rank." Pl.'s Resp. to Def.'s Mot. for Sum. Judg., Ex. 13. Moreover, "when an employee changes positions to one with less responsibility, the new salary will be the appropriate amount within the salary range of the new position and will not exceed 100% of the maximum salary for the new position." <u>Id</u>. Plaintiff and four other employees incurred a decrease in salary and change in responsibility during the transition. However, Plaintiff was the only employee whose

changes occurred before the consolidation. Pl.'s Resp. to Def.'s Mot. for Sum. Judg., Ex. 27.

There is no dispute that Plaintiff is African American, however, Plaintiff fails to proffer evidence supporting a racial discriminatory animus for Defendant's actions. Once the employer provides a legitimate, non-discriminatory reason for the adverse employment action, the plaintiff may still prevail if evidence has been proffered that tends to disprove the reasons offered by the defendant. Kline v. Tennessee Valley Authority, 128 F.3d 337, 347 (6th Cir. 1997). Even if the plaintiff proves that the employer's proffered reason is pretext, he still bears the ultimate burden of proving that discriminatory intent motivated the defendant's actions. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

Plaintiff relies on his 2000 OFCCP complaint and the resulting investigation against State Tech and  Dr. Call to support his claim that discriminatory intent motivated Defendant's actions. However, the OFCCP investigation concluded that there was insufficient evidence to support a finding of discrimination against Plaintiff.  Pl.'s Resp. to Def.'s Mot. for Sum. Judg. Ex. 7.  In addition, Dr. Call resigned on December 31, 1999. Id.  The appointed interim president, Dr. Essex, was also African American.  Id.  Thus, Plaintiff's complaint against Dr. Call fails to show that Defendant's legitimate nondiscriminatory reason is a pretext for discrimination since Dr. Essex made the final decision as to Plaintiff's transfer.

Without anything more than an assertion that his reduction in pay was effectively a demotion, Plaintiff fails to show that Defendant's adverse employment action was the result of racial discrimination.  Accordingly, Defendant's motion for summary judgment as to Plaintiff's disparate treatment claim is granted.

## C. Retaliation

Defendant argues that Plaintiff does not have any direct evidence showing that Defendant's actions were retaliatory.  However, if a plaintiff is unable to present direct evidence of retaliatory animus, the plaintiff may prove unlawful motivation by making out a *prima facie* case of retaliation. McDonnell Douglas, 411 U.S. 792; Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248

8

(1981); Wilson v. Stroh Companies, Inc., 952 F.2d 942, 945 (6th Cir. 1992). The *prima facie* case for retaliation requires a plaintiff to establish that "(1) he engaged in activity protected by Title VII; (2) the exercise of his civil rights was known to defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000).

Plaintiff argues that Defendant retaliated against him for filing a complaint memo against former State Tech president, John Kirk in 1995, two OFCCP complaints in 1998 and 2000 and complaint with the EEOC in 2002. Defendant does not dispute that these activities are protected by Title VII, nor does Defendant dispute its awareness of the complaints. Further, Defendant concedes that Plaintiff's transfer from Executive Assistant to Director of Work Keys/DACUM, a position that paid less and required less responsibility, was an adverse employment action. Plaintiff asserts that his demotion in the consolidation was also in retaliation for the exercise of his civil rights.

Plaintiff, however, fails to meet the fourth, causal connection, prong of his *prima facie case*. To show a causal connection between Plaintiff's protected activities and Defendant's adverse employment action, "the evidence must be sufficient to raise an inference that the protected activity was the likely reason for the adverse action." Creusere v. Bd. of Educ., 88 F. Appx. 813 * 822-21 (6th Cir. 2003). In Creusere, the Court found that the plaintiff failed to meet the causation prong of his *prima facie* case of retaliation since the evidence demonstrated that the plaintiff was not rehired after his layoff because the carpentry workload decreased and that he did not get along with the other carpenters. Id. at 821(citations omitted). In finding that it was unlikely that Plaintiff's protected class was the motivating factor in the defendant's decision not to rehire, the Sixth Circuit noted that the plaintiff had been recommended for positions twice in the past and that two years had elapsed between the plaintiff's complaint and his eventual layoff. Id.

Like Creusere, Defendant's actions in light of the consolidation do not raise an inference of discrimination. The Court will not include Plaintiff's complaint memo to John Kirk in 1995 and

9

complaint with the OFCCP in 1998 in the forgoing analysis. Plaintiff did not receive a demotion and even acquired additional responsibilities in 1999 with the WDC. Pl.'s Resp. to Def.'s Mot. for Sum. Judg. ¶ 6. It was not until a year prior to the consolidation that Defendant notified Plaintiff that his position would not be included in STCC's new organizational structure. Dr. Essex Depo. ¶ 143. The only position available was in the WDC, which had a lower salary range than Plaintiff's previous position. Id. Even then, Defendant accommodated Plaintiff's request to maintain the same salary he earned as Executive Assistant for a year so that he could adjust to the pay cut. Id. Two years elapsed between the time Plaintiff filed the 2000 OFCCP complaint naming Dr. Call and the time Plaintiff's salary decrease went into effect. However, Dr. Essex, an African American, and not Dr. Call, transferred Plaintiff to WDC prior to the consolidation. Dr. Essex even lamented that Plaintiff "was a good worker" and that he did not want to lose him. Id. Moreover, Plaintiff anticipated his salary decrease since he contracted with Defendant in 2001 to maintain his position and salary for the term of a year. The demands of the consolidation clearly superceded Plaintiff's allegations of retaliation stemming from the 2000 OFCCP complaint. Thus, Defendant has articulated an unrebutted nondiscriminatory reason for Plaintiff's demotion. As a result, Plaintiff fails make the causal connection that his transfer to the WDC was motivated by his race.

Plaintiff also argues that he was subjected to a hostile work environment in retaliation for filing a complaint with the EEOC. However, Plaintiff fails to proffer any evidence of acts occurring after the filing of his charge to support this allegation.

For the above reasons, Plaintiff fails to make a *prima facie* case of retaliation. Accordingly, Defendant's motion for summary judgment as to Plaintiff's retaliation claim is granted.

**D. Hostile Work Environment**

Plaintiff alleges that he was subjected to a hostile work environment. Upon review of the total record, Plaintiff fails to provide the Court with evidence that a hostile work environment existed after February 21, 2002. Under Title VII, Plaintiff can only merit relief for discreet acts of discrimination that occurred 300 days prior to filing suit on December 17, 2002. See 42 U.S.C. §

10

2000e-5(e)(1). As a result, the statutory time limit precludes Plaintiff's hostile work environment claim. Defendant's motion for summary judgment as to this claim is granted.

## IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS** Defendant's motion for summary judgment

IT IS SO ORDERED this *31* *st* day of *October* 2005.

BERNICE BOUIE DONALD
UNITED STATES DISTRICT JUDGE

11

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 72 in case 2:03-CV-02162 was distributed by fax, mail, or direct printing on November 2, 2005 to the parties listed.

---

Glenwood Paris Roane
LAW OFFICE OF GLENWOOD P. ROANE, SR.
217 Exchange Ave.
Memphis, TN 38105--350

Kathleen L. Caldwell
LAW OFFICE OF KATHLEEN L. CALDWELL
2080 Peabody Ave.
Memphis, TN 38104

Zachary S. Griffith
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 20207
Nashville, TN 37202--020

John W. Dalton
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 20207
Nashville, TN 37207--020

Honorable Bernice Donald
US DISTRICT COURT